**SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION**

| | |
|---|---|
| DENISE ADAMS HILL )<br>c/o 8403 Colesville Road, #1100 )<br>Silver Spring, MD 20910 )<br>    )<br>    Plaintiff, )<br>    )<br>v. )<br>    )<br>Bristol Bay Native Corporation )<br>Corporate Headquarters )<br>111 West 16th Avenue, Suite 400 )<br>Anchorage, AK 99501-5109 )<br>    )<br>**SERVE:** )<br>April Ferguson, General Counsel )<br>**c/o Val Mullaley, Esquire and** )<br>**Daniel L. Cheyett VIA Electrtonic Mail** )<br>Corporate Headquarters )<br>111 West 16th Avenue, Suite 400 )<br>Anchorage, AK 99501-5109 )<br>    )<br>AND )<br>STS Systems Integration, LLC )<br>7067 Old Madison Pike, Suite 170 )<br>Huntsville, AL 35806 )<br>    )<br>**SERVE:** )<br>CT Corporation System )<br>**c/o Val Mullaley, Esquire and** )<br>**Daniel L. Cheyett VIA Electrtonic Mail** )<br>1015 15th Street NW, Suite 1000 )<br>Washington, DC 20005 )<br>    )<br>AND )<br>Raul Quintana )<br>STS Systems Integration )<br>1826 North Loop 1604 W )<br>Suite 350F )<br>San Antonio, TX 78248 )<br>    )<br>    Defendants. )<br>    ) | Civil Action No.  **2018 CA 002488 B**<br>Judge<br><br>Next Event |

<u>**COMPLAINT**</u>
**For Declaratory and Injunctive Relief and Damages**

Plaintiff  Denise Adams Hill files this Complaint against Bristol Bay Native Corporation ("Bristol Bay"), STS Systems Integration ("STS"), and Raul Quintana ("Quintana"), pursuant to the D.C. Human Rights Act and District of Columbia common law.

**JURISDICTION**

1.  This Court has subject matter jurisdiction over this civil action under D.C. Code § 11-921(a).

**PARTIES**

2.  Plaintiff is a resident of the state of Maryland and was a co-employee of STS and the U.S. Department of Justice beginning in 2015 before she was terminated on the basis of her age, race, and gender.  At all times relevant to this complaint, Plaintiff was assigned to the Department of Justice's ("DOJ") Pubic Service Officer Benefits program (PSOB). Plaintiff is an African-American female, aged 63.

3.  Bristol Bay Native Corporation (Bristol Bay) is an Alaskan corporation doing business in the District of Columbia through its subsidiary STS.

4.  STS Systems Integration, LLC (STS) is an Alaskan Limited Liability Corporation engaged in the business of contracting with the U.S. Federal Government to provide staffing to the DOJ's PSOB. At all times relevant hereto, STS was Plaintiff's co-employer with DOJ.

5.  Raul Quintana is a STS employee who, at all times relevant to this complaint, was Plaintiff's supervisor.

## FACTS

6. Plaintiff began working at DOJ's PSOB in April of 2015. At the time of her termination, Plaintiff was an Attorney III Legal Advisor.

7. Plaintiff's position required her to review determinations for death and disability claims filed on behalf of public safety officers for legal sufficiency and prepare recommendations at the initial level, offer advice and counsel to the Hearing Officer at the first level of appeal, and prepare briefing packet for the Director of the Bureau of Justice Assistance for the final level of administrative appeal.

8. At 63 years of age, Plaintiff was the oldest attorney working in the office. Plaintiff also had the highest salary of any contract attorney working in the office and was among the highest salaries in comparison to the attorneys employed solely by the federal government.

9. Upon interviewing with Michael Daugherty, PSOB Counsel and Barbara Gilmore, Assistant PSOB Counsel in November 2014 for the PSOB position, Michael Daugherty began making ageist comments to the Plaintiff. During the interview, Daugherty advised Plaintiff that she was overqualified for the position.

10. During her tenure with the PSOB, Daugherty made statements about Plaintiff's "extensive" work experience.

11. Despite making comments about Plaintiff's extensive experience and over qualification for her position, Daugherty never considered Plaintiff for a federal government positions available within the PSOB.

12. Plaintiff applied for a Grade 13 federal position and, despite Daugherty's comments that Plaintiff was overqualified for her job, he did not consider Plaintiff for the position.

13. An experienced male attorney over age 55 who applied for the position was also not selected. This attorney had worked with three of the existing PSOB contract attorneys at the Department of Health and Human Services. He was not considered for the contract attorney vacancy filled by a then 29-year-old African American male as an Attorney I without claims review or litigation experience.

14. In 2015, the six contract attorneys, including Plaintiff, were divided into director appeals, hearing appeals and initial recommendations. Daugherty assigned Plaintiff to initial recommendations, despite the fact that she had experience handling appeals in the Federal Court.

15.  Daugherty behaved in an unprofessional and disparaging manner towards Plaintiff. Daugherty disparaged Plaintiff's work publicly in an effort to undermine Plaintiff. Raul Quintana was aware of Daugherty's conduct towards Plaintiff. On numerous occasions, Daugherty implicitly or explicitly chastised Plaintiff for questioning or scrutinizing claims decisions, even though it was her job to do so, and even though Plaintiff raised such issues upon review of PSOB claims in furtherance of PSOB's mission, legal obligations, and best interests.

16. For example, on one occasion, Daugherty was overheard making disparaging comments about Plaintiff's work product to the PSOB Director, without first discussing his comments with Plaintiff. On another occasion, after Plaintiff responded to an email from the assistant Legal Counsel and copied to several PSOB staff, Daugherty told Plaintiff that she should not be advising PSOB staff, which was actually her job.

17. In another instance in 2017, Plaintiff sought Daugherty's advice because of an issue between a Hearing Officer and the newer Assistant PSOB Counsel. Within 30

seconds of Plaintiff entering Daugherty's office, he behaved erratically, yelling and banging on his desk without listening to the resolution offered by Plaintiff.

18. In yet another instance Plaintiff was participating in a team meeting and raised a legitimate work-related question on behalf of all three initial review contract attorneys. Daugherty's response to Plaintiff was both demeaning and threatening. Daugherty loudly accused Plaintiff of not making him aware of the fact that all three attorneys had persistently been out of work for all intents and purposes for over a month. This accusation was contrary to emails Plaintiff sent to Daugherty and others despite the fact that it was not Plaintiff's responsibility to do so. Daugherty then followed up with "I should send you home." Daugherty's hostile behavior towards Plaintiff adversely impacted her ability to do her job effectively. Defendants permitted, tolerated, and explicitly and/or implicitly encouraged Daugherty to mistreat Plaintiff and denigrate her when she attempted to fulfill her job requirements of reviewing claims with appropriate scrutiny, making appropriate recommendations, and raising appropriate questions.

19. Defendant Quintana was aware of Daugherty's behavior towards Plaintiff. Defendant Quintana was aware that Daugherty treated Plaintiff differently from other STS contract employees. Defendant Quintana was willing to permit Daugherty to discriminate against Plaintiff so that he could shed eliminate Plaintiff's larger salary and benefits package including a 5% match to 401k and profit sharing and so that STS in complying with the governments wishes would be allowed to retain the DOJ PSOB contract.

20. While Daugherty disparaged Plaintiff's work unjustifiably, Plaintiff never heard Daugherty disparage the work of other contractors at the PSOB despite other contract attorneys and the Director having significant disagreements with his decisions on claims.

21. Throughout 2016, Plaintiff informed Daugherty and/or Defendant Quintana that she and the other initial recommendation attorney at the time were occasionally in danger of completely running out of claims to review. Despite the lack of work, in early 2017 a third initial recommendation attorney was hired to work with Plaintiff and the other initial recommendation contract attorney. The limited work load brought to Daugherty and the Defendants' attention would now be split between three initial recommendation attorneys.

22. The hiring of the third initial recommendation attorney brought the number of new hires of male contract employees under the age of 40, to three. In July of 201, despite the pronounced and persistent absence of claims referred to the three initial level contract attorneys, Daugherty requested that Defendant Bristol Bay hire a fourth attorney to work with the PSOB.

23. In September of 2017, Raul Quintana advised that Daugherty requested that the position be offered to a male attorney from the Social Security administration and, upon information and belief, this attorney was also under the age of 40.

24. The fourth initial recommendation attorney was hired so that Daugherty and Quintana could push Plaintiff out. Plaintiff was the only initial recommendation attorney over the age of 40.

25. Daugherty and other employees at PSOB withheld work assignments from Plaintiff in order to have a pretextual reason to terminate Plaintiff and eliminate Plaintiff's salary expense.

26. Defendant Quintana was aware that there was work to be done but that Daugherty was withholding the work in order to have a reason to terminate Plaintiff's employment.

27. Instead of standing up to Daugherty and protecting Plaintiff's position, Quintana was complicit in the scheme to terminate Plaintiff's employment due to her age, gender and race.

28. Daugherty sought to terminate Plaintiff because of her gender, race, and age. Quintana was aware that Daugherty had targeted Plaintiff for termination and complied with Daugherty's request to hire an additional contract attorney in early 2017, despite the fact that there was purportedly a lack of work at times for the two attorneys doing initial recommendations.

29. Shortly after the third attorney was hired, Daugherty instituted a new mandatory time recording system requiring that each attorney document 8 full hours of work daily in 15 minute increments so that the contractor, STS, could properly report the monthly aggregate total deliverables accomplished by the contract attorneys. This monthly aggregate statement of deliverables to be provided to the government was a contract requirement. There was no contract requirement for STS to provide the government with individual statements of deliverables that Daugherty required of the contract attorneys.

30. In May 2017, Daugherty commented favorably in a meeting with government attorneys as to the production of the two other initial recommendation attorneys based upon April 2017 reporting. Daugherty's praise for Plaintiff's two other colleagues while conspicuously not mentioning her was intended to publicly demean Plaintiff at work in front of her colleagues by implying that Plaintiff was not doing enough work. But, neither Daugherty, Defendant Quintana, nor anyone else ever told Plaintiff that she was underperforming or provided any basis for Daugherty's implication.

31. Daugherty made a veiled threat to Plaintiff when he stated in a subsequent team meeting that he intended to have a conversation with anyone not performing adequately, although there were no and had never been any performance standards offered.

32. Defendant Quintana was aware of the systems put in place by Daugherty to undermine Plaintiff's job. Quintana was also aware that Daugherty was improperly and unfairly recording and counting stats in order to skew the numbers against the Plaintiff. Defendant Quintana was aware that there had never been a complaint about Plaintiff's work product and that Plaintiff had never failed a performance evaluation. Nonetheless, Quintana went along with the scheme to terminate Plaintiff.

33. Daugherty has control of the number and caliber of claims assigned, and while the new system tracking individual productivity was instituted, Plaintiff had no cases assigned to work for extended periods of time. Along with other means of underreporting Plaintiff's productivity, the lack of work assignments was most effective.

34. Defendant Quintana also has control of the number and caliber of claims assigned to the initial recommendation attorneys. Quintana was aware that Plaintiff had no cases assigned to work on for extended periods of time in 2017 while statistics were being tracked. Quintana was aware that Plaintiff's lack of work would result in a reduction of the time Plaintiff could record in Daugherty's system, put in place to justify Plaintiff's termination.

35. Plaintiff discussed with Defendant Quintana that the three initial reviewers had run completely out of work beginning May 1. In subsequent months, Plaintiff emailed Defendant Quintana that workloads had continued to be low. Quintana's response was

"the government does not have a performance contract so that if you complete two claims a month, there is nothing they can do."

36. From the time Plaintiff was hired along with another 32 year old white male in 2015, no females and no males over the age of 40 were offered positions or promotions within the STS PSOB program although well qualified female candidates and candidates over the age of 40 applied for these positions.

37. Defendant Quintana was aware that Plaintiff had never had performance issues, had never had a negative performance evaluation, and had never been on a performance improvement plan.

38. After work hours on September 22, 2017 Plaintiff was called to an individual meeting with Defendant Quintana where she was told that October 1, 2017 would be her last day of work. Defendant Quintana indicated he had never received any negative information regarding Plaintiff's performance. Defendant Quintana indicated that Plaintiff's termination had been requested by Daugherty. Defendant Quintana informed Plaintiff that the government was not required to advise STS of any performance issues before summarily removing Plaintiff from her position. Defendant Quintana, when pressed by Plaintiff, stated that the decision was based upon "quality and quantity."

39. Plaintiff was told that her termination would be effective September 30, 2017. Plaintiff worked, without incident, up until that date. No work was assigned to the contract attorneys between September 18, 2017 and September 30, 2017.

40. Notwithstanding his having been made aware of an ongoing lack of sufficient work on an ongoing basis, instead of interceding in Daugherty's improper efforts or reassigning

Plaintiff in STS, Defendant Quintana repeated Daugherty's pretextual reason for Plaintiff's termination claiming the reason was "quality and quantity."

41. Defendant Quintana had a duty, as Plaintiff's employer, to protect Plaintiff from discrimination by STS contractors. Defendants STS and Bristol Bay had a duty, as Plaintiff and Quintana's employer, to properly train Defendant Quintana so that he would be equipped to protect Plaintiff from discrimination by STS contractors. Defendants did not have the proper training, policies, or practices in place to ensure Defendant Quintana appropriately handled the discrimination Plaintiff was subjected to by Mr. Daugherty.

42. When Plaintiff indicated that Defendant Quintana knew that Daugherty's reasons for terminating her were unsupportable under the circumstances, he responded that, given the threatening comment Michael made to Plaintiff in a team meeting, "[Daugherty] did not like you." Defendant Quintana knew that the reasons for terminating Plaintiff's employment were pretextual.

43. On September 30, 2017 Plaintiff reported to work to finish cleaning out her office and otherwise closing out her employment relationship with STS. At 3:15, a woman from STS along with the floor receptionist appeared at Plaintiff's work station in order to walk Plaintiff out of the building. Plaintiff told them that she had not yet completed her close-out tasks but the receptionist advised that Plaintiff could not stay any longer and had to exit the building. Other employees on the floor were shocked and later discussed that Plaintiff was walked out of the building carrying a box.

44. On Monday October 2, 2017, approximately thirty claims were assigned to each of the remaining contract attorneys. It is obvious that the claims were being withheld from Plaintiff by Daugherty for months.

45. On October 18, 2017 Defendant Quintana held a meeting with the STS contract attorneys. At that meeting, Defendant Quintana discussed Plaintiff's termination and the reasons given by Daugherty for Plaintiff's termination. Defendant Quintana informed STS staff that Daugherty wanted Plaintiff terminated for performance reasons. Quintana stated that Daugherty said Plaintiff was not doing enough work and Plaintiff's work was sub-par.

46. Quintana knew Daugherty had no authority to terminate Plaintiff without STS's approval and affirmative acts by STS to effectuate the termination. Quintana knew Plaintiff did not have performance issues but still repeated Daugherty's lie to STS staff in an open meeting, divulging Plaintiff's private employment information.

47. Defendant Quintana was made aware, from the Plaintiff, that the contract attorneys were in danger of running out of work when he hired additional contract attorneys. Upon information and belief Defendant Quintana knew that the government was withholding scores of cases to make it appear that there was not enough work for the contract attorneys to handle. Defendant Quintana knew that Plaintiff was the most qualified attorney working the claims cases for STS and that Plaintiff had seniority over the white male attorney under the age of 40 that was hired earlier in 2017 (despite the fact that there was, ostensibly, not enough work to go around). As the highest paid STS employee and one of a few of the STS employees who accepted health insurance benefits and contributed a robust amount to her 401(k) qualifying her for a 5% employer match, Defendant Quintana and STS were complicit in Plaintiff's termination because the contractor could reap the highest benefit by having Plaintiff terminated from the program

11

instead of one of the white male employees under the age of 40 with less experience and seniority than Plaintiff.

**COUNT I**
**Discrimination Based On Age, Gender, and Race**
**In Violation of The District of Columbia Human Rights Act**
**D.C. Code § 2-1401.11 *et seq.***
**All Defendants**

48. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-47 as if fully set forth herein.

49. Plaintiff is a member of protected classes because she is an African American woman over the age of 40. Plaintiff was the victim of unlawful discriminatory conduct at the hands of the Defendants when STS/Bristol Bay contractor Daugherty failed to hire her/promote her, failed to assign work to Plaintiff, failed to meet with Plaintiff, yelled at and humiliated Plaintiff in front of her co-workers, falsely claimed Plaintiff was not working as quickly as other employees, and ultimately instructed Defendant Quintana to terminate Plaintiff's employment for discriminatory reasons.

50. Plaintiff was unlawfully subjected to disparate treatment on the basis of her age, gender, and race and Defendant's reason for Plaintiff's treatment were not the actual reasons for these adverse employment actions but are pretext to discrimination in violation of the Human Rights Act.  There is no legitimate non-discriminatory reason for the treatment Plaintiff received at the hands of the Defendants.

51. In taking the foregoing actions described above, Defendants denied, restricted, and abridged Plaintiff's terms, conditions, and privileges of employment; materially and adversely affected Plaintiff's current and future employment opportunities; and inhibited Plaintiff from obtaining employment in her chosen field.

52. In taking the foregoing actions and discriminating against Plaintiff on account of her age Defendants violated The District of Columbia Human Rights Act, D.C. Code §§ 2-1401.11, *et seq.*

53. Defendants' violation of Plaintiff's rights under the Human Rights Act caused her to suffer past and future pecuniary loss, loss of employment opportunities, loss of pension and value of her pension, loss of 401(k) benefits, and continued loss of current and future employment opportunities, emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

**WHEREFORE**, Plaintiff requests that this Court issue a judgment against the Defendants in the amount of $5,000,000 in compensatory damages and $5,000,000 in punitive damages, along with Plaintiff's attorney's fees and court costs incurred in pursuing this matter.

<u>**COUNT II**</u>
**Age, Race, Gender Discrimination**
**Hostile Work Environment In Violation of**
**The District of Columbia Human Rights Act**
**D.C. Code § 2-1401.11 *et seq.***
**All Defendants**

54. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-53 as if fully set forth herein.

55. Plaintiff is a member of protected classes because she is an African American woman over the age of 40. Plaintiff was the victim of harassment in the workplace on the basis of her age, race, and gender when STS/Bristol Bay contractor Daugherty failed to hire her/promote her, failed to assign work to Plaintiff, failed to meet with Plaintiff, yelled at Plaintiff and humiliated Plaintiff in front of her co-workers, falsely claimed Plaintiff was not working as quickly as other employees, and ultimately instructed Defendant Quintana to terminate Plaintiff's employment for discriminatory reasons.

56. PSOB employees and supervisors harassed Plaintiff on an almost-daily basis as described above.  The harassment Plaintiff endured was severe and pervasive and altered the terms and conditions of her employment as described above.  The treatment Plaintiff endured at the hands of PSOB staff contributed to and caused Plaintiff to be terminated from her employment.

57. Plaintiff reported the harassment to Defendant Quintana. Defendant Quintana also admitted to Plaintiff that he knew Daugherty did not like her. Nonetheless, Defendant Quintana took no action to stop the harassment. There is no legitimate non-discriminatory reason for the treatment Plaintiff received at the hands of the Defendants.

58. In taking the foregoing actions and permitting Plaintiff to be harassed at work, without taking any measures to stop or prevent continued harassment, Defendants violated The District of Columbia Human Rights Act, D.C. Code §§ 2-1401.11, *et seq.*

59. Defendants' violation of Plaintiff's rights under the Human Rights Act caused her to suffer past and future pecuniary loss, loss of employment opportunities, loss of pension and value of her pension, loss of 401(k) benefits, and continued loss of current and future employment opportunities, emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

**WHEREFORE**, Plaintiff requests that this Court issue a judgment against the Defendants in the amount of $5,000,000 in compensatory damages and $5,000,000 in punitive damages, along with Plaintiff's attorney's fees and court costs incurred in pursuing this matter.

## COUNT III
## INVASION OF PRIVACY – FALSE LIGHT
## ALL DEFENDANTS

60. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-59 as if fully set forth herein.

61. Defendants published statements about the Plaintiff in an open public meeting with STS employees concerning her work performance. Defendants also approved and adopted the defamatory statements that Daugherty made publicly in the workplace against Plaintiff.

62. Defendants' statements were made by Defendant Quintana and are attributable to STS and Bristol Bay under the theory of *respondeat superior* since Defendant Quintana is an STS employee.

63. Defendants' statements were publicized to other STS employees and, upon information and belief, others in the District of Columbia community, including Federal government employees and others in the building where the PSOB is housed.

64. Plaintiff has a special relationship with the PSOB and Metro DC area community, as she has worked in the community as an attorney for many years.

65. Defendants' statements were communicated orally and were sure to reach the public at large.

66. Defendants' statements were obviously about Plaintiff since Plaintiff was named at the meeting held by Quintana on October 18, 2017.

67. Defendants' statements, oral and written, placed Plaintiff in a false light to PSOB, STS, and Federal government employees, along with members of the general public in the Metropolitan DC Area.

68. Defendants' statements were offensive to Plaintiff and would have been offensive to a reasonable person.

69. None of the statements published about Plaintiff were true.

70. Defendants had no right, consent, permission, or privilege to publish the above statements about the Plaintiff to anyone.  No reasonable person in Defendants' position would have published such false and defamatory statements knowing that the consequences would be damaging to the Plaintiff's reputation and that it could limit and inhibit the Plaintiff's future job prospects.

71. Knowing the possible consequences to Plaintiff, Defendants made and published the above statements nonetheless.

72. As a result of the oral and written statements published by Defendants placing Plaintiff in a false light to the public, Plaintiff suffered special harm to her reputation.

73. Plaintiff suffered, and continues to suffer, severe emotional stress and mental anguish as a result of Defendants' actions and omissions.  Plaintiff was embarrassed and humiliated by Defendants' false statements as any reasonable person would be.

74. Plaintiff's professional reputation has been irreparably damaged because of the Defendants' actions. Plaintiff must now tell prospective employers that she was terminated from a job for performance issues, despite the fact that she had no performance issues.

75. Defendant's actions were egregious and taken in conscious disregard of or with deliberate indifference to Plaintiff's reputation.  This behavior is outrageous, shocks the conscience, wanton, and oppressive, and was taken with legal and actual malice.

**WHEREFORE**, Plaintiff requests that this Court issue a judgment against the Defendants in the amount of $5,000,000 in compensatory damages and $5,000,000 in punitive damages, along with Plaintiff's attorney's fees and court costs incurred in pursuing this matter.

**COUNT IV**
**INVASION OF PRIVACY**
**PUBLICATION OF PRIVATE FACTS**
**ALL DEFENDANTS**

76. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-75 as if fully set forth herein.

77. Defendants published private personnel facts about the Plaintiff in a meeting on October 18, 2017.

78. The personnel information published by Defendant Quintana was private.

79. The public had no legitimate concern about the facts behind Plaintiff's termination, which Defendants published.

80. The publication of facts surrounding Plaintiff's termination caused suffering, shame, and humiliation to the Plaintiff, as it would to any person of ordinary sensibilities.

81. The publication of private facts was made by Defendant Quintana and is attributable to Defendants STS and Bristol Bay under the theory of *respondeat superior* since Defendant Quintana is an STS employee.

82. Defendants' statements were publicized to other STS employees and, upon information and belief, others in the District of Columbia community, including Federal government employees and others in the building where the PSOB is housed.

83. Defendants' statements were obviously about Plaintiff since Plaintiff was named at the meeting held by Quintana on October 18, 2017.

84. Defendants' statements were offensive to Plaintiff and would have been offensive to a reasonable person.

85. While the fact of Plaintiff's termination was true because Daugherty did, in fact, order Quintana to terminate the Plaintiff's employment, the underlying allegations that Plaintiff was terminated for performance reasons, Plaintiff was not doing enough work, and that Plaintiff's work was sub-par, were all false.

86. Defendants had no right, consent, permission, or privilege to publish the above statements about the Plaintiff to anyone.  No reasonable person in Defendants' position would have published such private facts knowing that the consequences would be damaging to the Plaintiff's reputation and that it could limit and inhibit the Plaintiff's future job prospects.

87. Knowing the possible consequences to Plaintiff, Defendants made and published the private facts nonetheless.

88. As a result of Defendant Quintana publishing private facts about Plaintiff, she suffered special harm to her reputation in the community of attorneys in the District of Columbia, at a time when she must look for work in the legal field.

89. Plaintiff suffered, and continues to suffer, severe emotional stress and mental anguish as a result of Defendants' actions and omissions.  Plaintiff was embarrassed and humiliated by Defendants' publication of Plaintiff's private facts as any reasonable person would be.

90. Plaintiff's professional reputation has been irreparably damaged because of the Defendants' actions.

91. Defendant's actions were egregious and taken in conscious disregard of or with deliberate indifference to Plaintiff's reputation.  This behavior is outrageous, shocks the conscience, wanton, and oppressive, and was taken with legal and actual malice.

**WHEREFORE**, Plaintiff requests that this Court issue a judgment against the Defendants in the amount of $5,000,000 in compensatory damages and $5,000,000 in punitive damages, along with Plaintiff's attorney's fees and court costs incurred in pursuing this matter.

## COUNT V
### Negligent Training, Hiring, Retention, Supervision
### Defendants STS and Bristol Bay

92. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-91 as if fully set forth herein.

93. Defendants had a duty to protect Plaintiff from discrimination in the workplace.

94. As Plaintiff's employer, Defendants discriminated against Plaintiff by failing to supervise Daugherty's and Defendant Quintana's treatment of a direct report (Plaintiff), including their failures to hire/promote Plaintiff appropriately, failing to assign work to Plaintiff appropriately, failing to meet with Plaintiff, yelling at Plaintiff and humiliating her at work in front of her co-workers, frustrating Plaintiff's ability to carry out her core job functions and denigrating her when she made claims determinations or asked questions that Daugherty did not like, falsely claiming Plaintiff was not working as quickly as other employees, and ultimately instructing Defendant Quintana to terminate Plaintiff's employment for discriminatory, retaliatory, and pretextual reasons. Defendant Quintana, despite knowing that Daugherty's reasons for terminating Plaintiff were pretextual, took no action to protect the Plaintiff from termination.

95. Defendant Quintana was not properly trained to react to discrimination in the workplace and failed to act to report the discrimination to the DOJ (STS's contractor) Bristol Bay or STS.

96. Defendant Quintana had actual knowledge that Daugherty's reasons for terminating Plaintiff were pretextual; alternatively, Quintana should have known that Daugherty's reasons for terminating Plaintiff were pretextual.

97. Defendants STS and Bristol Bay had actual knowledge that they failed to adequately train Quintana to investigate and report discrimination and harassment once he is made aware of such discrimination and harassment.

98. Defendants STS and Bristol Bay knew or should have known that Quintana was not trained to inform STS, Bristol Bay, or DOJ when a subordinate was the victim of unlawful discrimination.

99. Armed with this actual and/or constructive knowledge, Defendants STS and Bristol Bay failed to adequately train and supervise Quintana to ensure that he was cognizant of the proper way to handle discrimination in the workplace.

100.     As a result of Defendants' breach of duty, Plaintiff suffered past and future pecuniary loss, loss of employment and future employment opportunities, loss of wages and benefits, emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

**WHEREFORE**, Plaintiff requests that this Court issue a judgment against the Defendants in the amount of $5,000,000 in compensatory damages and $5,000,000 in punitive damages, along with Plaintiff's attorney's fees and court costs incurred in pursuing this matter.

## COUNT VI
### Negligence – All Defendants

101.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-100 as if fully set forth herein.

102.     Defendants had a duty to protect Plaintiff from discrimination in the workplace.

103.     Defendants breached this duty of care when, with knowledge of the discrimination Plaintiff suffered in the workplace, Defendants took no action to protect Plaintiff.

104.     Defendants could have taken action to protect Plaintiff when Daugherty lied to Defendant Quintana by claiming that Plaintiff had performance issues. Alternatively, Defendant Quintana was negligent when he failed to investigate the alleged performance issues before terminating Plaintiff's employment. Such investigation would have revealed that Daugherty's reasons for terminating Plaintiff were pretextual.

105.     Plaintiff's termination and resulting damages were directly caused by Defendants' breach of duty. Defendants Bristol Bay and STS are liable for Defendant Quintana's negligence under the theory of *respondeat superior*.

106.     As a result of Defendants' breach of duty, Plaintiff suffered past and future pecuniary loss, loss of employment and future employment opportunities, loss of wages and benefits, emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

**WHEREFORE**, Plaintiff requests that this Court issue a judgment against the Defendants in the amount of $5,000,000 in compensatory damages and $5,000,000 in punitive damages, along with Plaintiff's attorney's fees and court costs incurred in pursuing this matter.

## COUNT VII

### Intentional Infliction of Emotional Distress

107.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-106 as if fully set forth herein.

108.     Each of the Defendants engaged in the above conduct including, but not limited to, failure to take any action to protect Plaintiff from discrimination, failing to investigate an obvious pretextual reason for terminating Plaintiff, and terminating Plaintiff's employment with actual knowledge that the reason for the termination was fabricated. Such conduct is objectively extreme and outrageous.

109.     As a direct and proximate result of the Defendants' actions, Plaintiff had and continues to have trouble sleeping and concentrating at work. Plaintiff's mental anguish is such that she is in unable to perform at work and in her personal life to her highest ability. Plaintiff feels embarrassed and humiliated having to take a temporary position because she was unlawfully terminated from her job. Plaintiff is depressed and anxious, not wanting to leave the house in the morning or even get out of bed. Plaintiff suffered debilitating gastrointestinal symptoms as a result of the discriminatory and negligent treatment she faced.

**WHEREFORE**, Plaintiff requests that this Court issue a judgment against the Defendants in the amount of $5,000,000 in compensatory damages and $5,000,000 in punitive damages, along with Plaintiff's attorney's fees and court costs incurred in pursuing this matter.

## COUNT VIII
**Wrongful Discharge
In Violation of the Public Policy Against
Age, Gender, and Race Discrimination
Defendants Bristol Bay and STS**

110.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-109 as if fully set forth herein.

111.     Defendants committed the common law tort of wrongful discharge against Plaintiff when they terminated her employment. The common-law tort of wrongful discharge is "an exception to the traditional at-will doctrine governing termination of employment, where the discharge violates 'a clear mandate of public policy.'" *Carter v. District of Columbia*, 980 A.2d 1217 (DC, 2009) citing *District of Columbia v. Beretta, U.S.A., Corp.*, 872 A.2d 633, 645 (D.C.2005) (en banc) (quoting *Carl v. Children's Hosp.*, 702 A.2d 159, 164 (D.C.1997) (Terry, J., concurring)); *see also Fingerhut v. Children's Nat'l Med. Ctr.*, 738 A.2d 799, 803-04 (D.C.1999); *Adams v. George W. Cochran & Co.*, 597 A.2d 28, 34 (D.C.1991).

112.     Application of the tort of common law wrongful discharge must be carefully tethered to fundamental policies implicit in statutes or municipal regulations. *District of Columbia v. Beretta, U.S.A., Corp.*, 872 A.2d 633, 645 (D.C.2005).

113.     Plaintiff's discharge violates clear public policy mandates against workplace discrimination. These public policies are codified in District of Columbia regulations and statutes, namely, the D.C. Human Rights Act.

114.     Terminating Plaintiff in violation of the DCHRA is contrary to the District's public policy interests.

115.     It is also contrary to public policy to terminate an employee for doing the job or the task she is charged to complete.

116.     Plaintiff was harassed and terminated after she reviewed PSOB claims and made recommendations based on applicable laws and facts, which is exactly what her job required.

117.     Plaintiff's termination was against clear public policy mandates.

118.     Plaintiff suffered, and continues to suffer, severe emotional stress and mental anguish as a result of Defendants' actions and omissions.

119.     Plaintiff's professional reputation has been irreparably damaged because of the Defendants' actions, causing Plaintiff to suffer financial losses, lost wages, lost benefits, pension losses, pain and suffering, embarrassment and humiliation, loss of employment, and permanent damage to his professional reputation.

**WHEREFORE**, Plaintiff requests that this Court issue a judgment against the Defendants in the amount of $5,000,000 in compensatory damages and $5,000,000 in punitive damages, along with Plaintiff's attorney's fees and court costs incurred in pursuing this matter.

<u>**JURY TRIAL PRAYER**</u>

Plaintiff hereby demands a trial by jury on all such eligible claims.

Dated: April 9, 2018                          Respectfully submitted,


/S/ Darrell Chambers
Darrell Chambers [980872]
The Chambers Firm, LLC
8403 Colesville Road Suite 1100
Silver Spring, MD 20910
(240) 638-2831
darrell@chambersfirmDCMD.com

*/s/ Douglas S. Rosenbloom*
Douglas S. Rosenbloom [1016235]
The Law Office of Doug Rosenbloom, LLC
7304 Carroll Avenue, #198
Takoma Park, MD 20912
(202) 684-8510
doug@chambersrosenbloom.com

*Counsel for Plaintiff*

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

_Denise Adams Hill_

vs

_Bristol Bay Native Corporation_

Case Number: __2018 CA 002488 B__

Date: __4/9/2018__

☑ One of the defendants is being sued
in their official capacity.

| | |
|---|---|
| Name: *(Please Print)* _Darrell Chambers_ | Relationship to Lawsuit |
| Firm Name: _The Chambers Firm, LLC_ | ☑ Attorney for Plaintiff |
| Telephone No.:          Six digit Unified Bar No.: | ☐ Self (Pro Se) |
| | ☐ Other: _____ |

TYPE OF CASE:  ☐ Non-Jury      ☑ 6 Person Jury      ☐ 12 Person Jury

Demand: $ __10,000,000__          Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.:_____   Judge: _____   Calendar #:_____

Case No.:_____   Judge: _____   Calendar#:_____

---

**NATURE OF SUIT:**      *(Check One Box Only)*

**A. CONTRACTS**                    **COLLECTION CASES**

| | | |
|---|---|---|
| ☐ 01 Breach of Contract | ☐ 14 Under $25,000 Pltf. Grants Consent | ☐ 16 Under $25,000 Consent Denied |
| ☐ 02 Breach of Warranty | ☐ 17 OVER $25,000 Pltf. Grants Consent | ☐ 18 OVER $25,000 Consent Denied |
| ☐ 06 Negotiable Instrument | ☐ 27 Insurance/Subrogation | ☐ 26 Insurance/Subrogation |
| ☐ 07 Personal Property | Over $25,000 Pltf. Grants Consent | Over $25,000 Consent Denied |
| ☐ 13 Employment Discrimination | ☐ 07 Insurance/Subrogation | ☐ 34 Insurance/Subrogation |
| ☐ 15 Special Education Fees | Under $25,000 Pltf. Grants Consent | Under $25,000 Consent Denied |
| | ☐ 28 Motion to Confirm Arbitration | |
| | Award (Collection Cases Only) | |

**B. PROPERTY TORTS**

| | | |
|---|---|---|
| ☐ 01 Automobile | ☐ 03 Destruction of Private Property | ☐ 05 Trespass |
| ☐ 02 Conversion | ☐ 04 Property Damage | |
| ☐ 07 Shoplifting, D.C. Code § 27-102 (a) | | |

**C. PERSONAL TORTS**

| | | |
|---|---|---|
| ☐ 01 Abuse of Process | ☐ 10 Invasion of Privacy | ☑ 17 Personal Injury- (Not Automobile, |
| ☐ 02 Alienation of Affection | ☐ 11 Libel and Slander | Not Malpractice) |
| ☐ 03 Assault and Battery | ☐ 12 Malicious Interference | ☐ 18 Wrongful Death (Not Malpractice) |
| ☐ 04 Automobile- Personal Injury | ☐ 13 Malicious Prosecution | ☐ 19 Wrongful Eviction |
| ☐ 05 Deceit (Misrepresentation) | ☐ 14 Malpractice Legal | ☐ 20 Friendly Suit |
| ☐ 06 False Accusation | ☐ 15 Malpractice Medical (Including Wrongful Death) | ☐ 21 Asbestos |
| ☐ 07 False Arrest | ☑ 16 Negligence- (Not Automobile, | ☐ 22 Toxic/Mass Torts |
| ☐ 08 Fraud | Not Malpractice) | ☐ 23 Tobacco |
| | | ☐ 24 Lead Paint |

SEE REVERSE SIDE AND CHECK HERE          IF USED

# Information Sheet, Continued

**C. OTHERS**

- [ ] 01 Accounting
- [ ] 02 Att. Before Judgment
- [ ] 05 Ejectment
- [ ] 09 Special Writ/Warrants
    (DC Code § 11-941)
- [ ] 10 Traffic Adjudication
- [ ] 11 Writ of Replevin
- [ ] 12 Enforce Mechanics Lien
- [x] 16 Declaratory Judgment

- [ ] 17 Merit Personnel Act (OEA)
    (D.C. Code Title 1, Chapter 6)
- [ ] 18 Product Liability

- [ ] 24 Application to Confirm, Modify,
    Vacate Arbitration Award (DC Code § 16-4401)
- [ ] 29 Merit Personnel Act (OHR)
- [ ] 31 Housing Code Regulations
- [ ] 32 Qui Tam
- [ ] 33 Whistleblower

**II.**

- [ ] 03 Change of Name
- [ ] 06 Foreign Judgment/Domestic
- [ ] 08 Foreign Judgment/International
- [ ] 13 Correction of Birth Certificate
- [ ] 14 Correction of Marriage
    Certificate
- [ ] 26 Petition for Civil Asset Forfeiture (Vehicle)
- [ ] 27 Petition for Civil Asset Forfeiture (Currency)
- [ ] 28 Petition for Civil Asset Forfeiture (Other)

- [ ] 15 Libel of Information
- [ ] 19 Enter Administrative Order as
    Judgment [ D.C. Code §
    2-1802.03 (h) or 32-151 9 (a)]
- [ ] 20 Master Meter (D.C. Code §
    42-3301, et seq.)

- [ ] 21 Petition for Subpoena
    [Rule 28-1 (b)]
- [ ] 22 Release Mechanics Lien
- [ ] 23 Rule 27(a)(1)
    (Perpetuate Testimony)
- [ ] 24 Petition for Structured Settlement
- [ ] 25 Petition for Liquidation

**D.  REAL PROPERTY**

- [ ] 09 Real Property-Real Estate
- [ ] 12 Specific Performance
- [ ] 04 Condemnation (Eminent Domain)
- [ ] 10 Mortgage Foreclosure/Judicial Sale
- [ ] 11 Petition for Civil Asset Forfeiture (RP)

- [ ] 08 Quiet Title
- [ ] 25 Liens: Tax / Water Consent Granted
- [ ] 30 Liens: Tax / Water Consent Denied
- [ ] 31 Tax Lien Bid Off Certificate Consent Granted

_____
Attorney's Signature

4/9/2018
_____
Date

CV-496/ June 2015

Superior Court of the District of Columbia
CIVIL DIVISION
Civil Actions Branch
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

_Denise Hill_
_____
Plaintiff

vs.

_Bristol Bay Native Corporation_        Case Number  **2018 CA 002488 B**
_____
Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

**DARRELL CHAMBERS**
_____
Name of Plaintiff's Attorney

**8403 Colesville Road Suite 1100**
_____
Address
**Silver Spring, MD 20910**

**(240) 638-2831**
_____
Telephone

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202)879-4828로 전화주십시오.     የትርጉም እርዳታ ለማግኘት (202) 879-4828 ይደውሉ

_Clerk of the Court_

By _____
Deputy Clerk

Date  **04/17/2018**

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                    Super. Ct. Civ. R. 4

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

Denise Hill
_____
Plaintiff

vs.

STS Systems Integration, LLC          Case Number    2018 CA 002488 B
_____
Defendant

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

DARRELL CHAMBERS
_____            _Clerk of the Court_
Name of Plaintiff's Attorney

8403 Colesville Road Suite 1100
_____            By _____
Address                                                                        Deputy Clerk

Silver Spring, MD 20910

(240) 638-2831
_____            Date          04/17/2018
Telephone

如需翻译,请打电话 (202) 879-4828          Veuillez appeler au (202) 879-4828 pour une traduction          Dể có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202)879-4828로 전화해주세요.          ኛምፅኛ ችርኘ ስማናተ (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

Denise Hill
_____
Plaintiff

vs.

Raul Quintana                        Case Number    **2018 CA 002488 B**
_____
Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

**DARRELL CHAMBERS**
_____          *Clerk of the Court*
Name of Plaintiff's Attorney

**8403 Colesville Road Suite 1100**          By _____
_____                          Deputy Clerk
Address
**Silver Spring, MD 20910**
_____
**(240) 638-2831**                          Date    **04/17/2018**
_____
Telephone
如需翻译,请打电话 (202) 879-4828          Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828로 전화주십시오    ያማርኛ ተርጓሚ ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                             Super. Ct. Civ. R. 4



**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Telephone: (202) 879-1133 • Website: www.dccourts.gov**

DENISE ADAMS HILL
  Vs.                                                           C.A. No.       2018 CA 002488 B
BRISTOL BAY NATIVE CORPORATION et al

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the summons, the complaint, and this Initial Order and Addendum. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in Super. Ct. Civ. R. 4(m).

(3) Within 21 days of service as described above, except as otherwise noted in Super. Ct. Civ. R. 12, each defendant must respond to the complaint by filing an answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in Super. Ct. Civ. R. 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an initial scheduling and settlement conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than seven business days before the scheduling conference date.
No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Robert E. Morin

Case Assigned to: Judge HIRAM E PUIG-LUGO
Date:  April 13, 2018
Initial Conference: 9:30 am, Friday, July 13, 2018
Location:   Courtroom 317
               500 Indiana Avenue N.W.
               WASHINGTON, DC 20001

CAIO-60

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement.  The early mediation schedule shall be included in the Scheduling Order following the ISSC.  Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator.  Information about the early mediation date also is available over the internet at https://www:dccourts.gov/pa/.  To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. D.C. Code § 16-2825 Two separate Early Mediation Forms are available.  Both forms may be obtained at www.dccourts.gov/medmalmediation.  One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator.  Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W.  Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov.  *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles.  All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a).  If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case.  D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code§ 16-2826.  Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Actions Branch.  The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief   Judge   Robert   E.   Morin

CAIO-60